IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
WILLARD E. BARTEL, et al.,        :    CONSOLIDATED UNDER
(Administrators for Estate of     :    MDL 875
Gilbert E. Riddick)               :
                                  :
      Plaintiffs,                 :
                                  :
      v.                          :
                                  :
A-C PRODUCT LIABILITY TRUST,      :
et al.,                           :
                                  :    E.D. Pa. Civil Action No.
      Defendants.                 :    2:11-cv-30928-ER
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                      September 29, 2015

This case was transferred in January 2011 from the United State District Court for the Northern District of Ohio to the United States District Court for the Eastern District of Pennsylvania, where it became part of the consolidated asbestos products liability multidistrict litigation (MDL 875). The case was assigned to the Court's maritime docket ("MARDOC"). Plaintiffs allege that Gilbert E. Riddick ("Decedent" or "Mr. Riddick") was exposed to asbestos while working aboard various ships. Plaintiffs assert that Mr. Riddick developed an asbestos-related illness as a result of his exposure to asbestos aboard those ships.

For the reasons that follow, the Court will deny Defendants' motion.

## I.   BACKGROUND

In March of 2000, Mr. Riddick brought claims against various defendants, including various shipowners represented by Thompson Hine LLP ("Defendants" or "the Thompson Hine Shipowners"). By way of Order dated March 14, 1997, Judge Charles Weiner[1] had already dismissed those claims administratively, leaving open the possibility for the action to be pursued at a later, unspecified date.[2] Approximately three

---

[1]    Judge Weiner presided over MDL 875 from its inception in 1991 until his passing in 2005. In 2005, Judge James Giles was designated to preside over MDL 875, where he remained until his resignation from the bench in 2008. In October 2008, Judge Eduardo Robreno, the undersigned, was appointed to succeed Judge Giles, and he has presided over MDL 875 since that date.

[2]    On May 2, 1996, Judge Weiner administratively dismissed all pending MARDOC claims without prejudice, noting that the claimants had "provide[d] no real medical or exposure history," and had been unable to do so for months. In re Asbestos Prods. Liab. Litig. (No. VI), No. 2 MDL 875, 1996 WL 239863, at *1–2 (E.D. Pa. May 2, 1996). Judge Weiner also ordered that these "asymptomatic cases" could be activated if the plaintiffs began to suffer from an impairment and could show (1) "satisfactory evidence [of] an asbestos-related personal injury compensable under the law," and (2) "probative evidence of exposure" to a defendant's products. Id. at *5. On March 14, 1997, Judge Weiner applied that dismissal order to all future MARDOC cases (e.g., this case). In 2002, the MDL Court ordered that administratively dismissed cases remain active for certain purposes (e.g., entertaining settlement motions and orders, motions for amendment to the pleadings, etc.), and in 2003, clarified that the administrative dismissals were "not intended to provide a basis for excluding the MARDOC claimants from participating in settlement programs or prepackaged bankruptcy programs[.]" In re Am. Capital Equip., 296 Fed. App'x 270, 272 (3d Cir. 2008) (quoting In re Asbestos Prods. Liab. Litig. (No. VI), Order Granting Relief to MARDOC Claimants with Regard to Combustion Eng'g, Inc., No. 2 MDL 875 (E.D. Pa. Feb. 19, 2003)).

years after filing his asbestos action, on December 13, 2002,
Mr. Riddick filed a voluntary petition under Chapter 7 in the
United States Bankruptcy Court for the Eastern District of
Virginia. The bankruptcy case was closed approximately four
months later, on April 4, 2003. On January 27, 2011 –
approximately eight years after the bankruptcy case was closed
and approximately eleven years after Mr. Riddick first filed his
asbestos action – the MDL Court reinstated the asbestos action,
which had been dismissed by Judge Weiner in 1997. A summary of
this timeline of events is as follows:

· March 14, 1997 - Asbestos action administratively dismissed
· March 31, 2000 - Asbestos action filed
· December 13, 2002 - Bankruptcy action filed
· April 4, 2003 - Bankruptcy action closed
· January 27, 2011 - Asbestos action reinstated

Defendants have moved for summary judgment, arguing
that (1) Plaintiffs' claims are barred by way of judicial
estoppel because he failed to disclose the asbestos action as an
asset in his bankruptcy filing, and (2) Plaintiffs cannot pursue
the asbestos action because it is now owned by the bankruptcy
estate.

## II. LEGAL STANDARD

### A. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine
dispute as to any material fact and the moving party is entitled

to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

B. <u>The Applicable Law</u>

The parties appear to assume that Defendants' legal arguments regarding "judicial estoppel" and the "real party in interest" are matters of federal law that should be decided in the first instance by the Court. The Court agrees with this approach. See <u>Ryan Operations G.P. v. Santiam-Midwest Lumber Co.</u>, 81 F.3d 355, 358 (3d Cir. 1996).[3] In matters of federal law, the MDL transferee court applies the law of the circuit where it sits, which in this case is the law of the U.S. Court of Appeals for the Third Circuit. <u>Various Plaintiffs v. Various Defendants ("Oil Field Cases")</u>, 673 F. Supp. 2d 358, 362–63 (E.D. Pa. 2009) (Robreno, J.). Therefore, the Court will apply Third Circuit law in deciding the issues raised by Defendants' motion.

**III. THE PARTIES' ARGUMENTS**

A. <u>Judicial Estoppel</u>

Defendants contend that Plaintiffs' claims are barred on grounds of judicial estoppel. Specifically, they contend that Mr. Riddick took irreconcilably inconsistent positions in his bankruptcy proceeding and the instant proceeding. Defendants state that Mr. Riddick concealed the existence of his asbestos

---

[3]     "A federal court's ability to protect itself from manipulation by litigants should not vary according to the law of the state in which the underlying dispute arose." <u>Ryan Operations</u>, 81 F.3d at 358 n.2.

claims when filing for bankruptcy by not reporting them as pending or likely claims on Schedule B ("Personal Property"), while simultaneously asserting such claims in the current and then-pending asbestos action. They further assert that a finding of bad faith is warranted because Mr. Riddick had knowledge of the asbestos claims at the time that he filed for bankruptcy and had a motive to conceal the claims from the Bankruptcy Court (i.e., to keep any proceeds of the claims while reducing the amount of assets available for distribution amongst the creditors – a motive Defendants assert is common to nearly all debtors in bankruptcy). Finally, Defendants contend that no lesser remedy is warranted because the sanction of barring the asbestos claims is necessary to (1) keep Plaintiffs from profiting from the omission and (2) preserve the integrity of the bankruptcy proceedings.

Plaintiffs contend that the asbestos claims are not barred on grounds of judicial estoppel. First, Plaintiffs contend that Mr. Riddick did not take inconsistent positions between his bankruptcy filing and the present asbestos action because at the time of his bankruptcy filing – and throughout the entire duration of that action – his asbestos claims were dismissed, such that he was not required to list them as an asset in his bankruptcy action. Moreover, Plaintiffs argue that even if Mr. Riddick should have identified the asbestos claims,

the failure to do so was a good faith mistake such that judicial estoppel is not warranted.

Second, Plaintiffs assert that Defendants bear the burden of establishing bad faith, but have no evidence that Mr. Riddick acted in bad faith when he did not list his asbestos claims as an asset in his bankruptcy filing. Additionally, Plaintiffs suggest that bad faith cannot be proven in light of the fact that the claims were dismissed long before Mr. Riddick filed for bankruptcy and were only reinstated by the MDL Court long after the bankruptcy was closed.

B.   Real Party in Interest/Standing

In the alternative, Defendants contend that Plaintiffs have no right to pursue the claims because the claims no longer belong to Plaintiffs and instead belong to the bankruptcy trustee. Specifically, Defendants argue that, even though Mr. Riddick did not report the asbestos claims as assets in the bankruptcy filing, as required by 11 U.S.C. § 541(a)(1), those claims automatically became part of the bankruptcy estate when the bankruptcy petition was filed. As a result, they assert that only the bankruptcy trustee can administer the claims.

Defendants also argue that because Mr. Riddick did not reveal the asbestos claims, such that they were never properly scheduled as assets, the trustees were incapable of passing

7

those claims back to Mr. Riddick through abandonment of any remaining assets not administered (as would normally happen pursuant to 11 U.S.C. § 554). As such, Defendants assert that, even though the bankruptcy action has closed, the rights to the asbestos claims did not revert back to Mr. Riddick upon that closure and instead remain with the trustee, such that Plaintiffs may not now pursue them.[4]

Plaintiffs assert that, because the asbestos claims were dismissed during the entire pendency of the bankruptcy action, they were never assets of the bankruptcy estate – regardless of whether or not Mr. Riddick disclosed them. In short, Plaintiffs argue that the bankruptcy estate could not have an asset that was not in existence at the time of the bankruptcy.

## IV.  DISCUSSION

The bankruptcy code requires debtors seeking benefits under its terms to schedule, for the benefit of creditors, all his or her interests and property rights. Oneida Motor Freight,

---

[4]      Defendants also asserts that Plaintiffs may only pursue claims held by Mr. Riddick at the time of his death and that, because the claims belonged to the bankruptcy trustee at the time of Mr. Riddick's death, there is no way Plaintiffs can salvage those claims now. In support of this argument, Defendants rely upon two decisions regarding FELA: Flynn v. New York, N.H., & H.R. Co., 283 U.S. 53, 56 (1931), and Michigan Central R. Co. v. Vreeland, 227 U.S. 59, 70 (1913).

Inc. v. United Jersey Bank, 848 F.2d 414, 416 (3d Cir. 1988); 11
U.S.C. §§ 521, 1125. This duty of disclosure includes not only
pending lawsuits or lawsuits the debtor intends to bring, but
even any potential and likely causes of action. See Krystal
Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp., 337
F.3d 314, 322 (3d Cir. 2003); Oneida, 848 F.2d at 417 (providing
that "[i]t has been specifically held that a debtor must
disclose any litigation likely to arise in a non-bankruptcy
contest"). However, debtors are not required to list "every
'hypothetical,' 'tenuous,' or 'fanciful' claim on an asset
disclosure form." Freedom Med., Inc. v. Gillespie, No. 06-3195,
2013 WL 2292023, at *23 (E.D. Pa. May 23, 2013) (quoting Krystal
Cadillac, 337 F.3d at 323).

   Once the debtor has filed his bankruptcy petition, the
bankruptcy estate - which in a Chapter 7 case is controlled by
the trustee - "encompasses everything that the debtor owns upon
filing a petition, as well as any derivative rights, such as
property interests the estate acquires after the case
commences." In re O'Dowd, 233 F.3d 197, 202 (3d Cir. 2000).
"While a bankruptcy case is pending, it is the trustee, and not
the debtor, who has the capacity to pursue the debtor's claims."
In re Kane, 628 F.3d at 637 (internal quotation marks and
citations omitted). Additionally, "[p]ursuant to 11 U.S.C. §
554(d), a cause of action which a debtor fails to schedule,

remains property of the estate because it was not abandoned and not administered." Allston-Wilson v. Philadelphia Newspapers, Inc., No. 05-4056, 2006 WL 1050281, at *1 (E.D. Pa. Apr. 20, 2006); see also In re Kane, 628 F.3d at 637 ("an asset must be properly scheduled in order to pass to the debtor through abandonment under 11 U.S.C. § 554") (quoting Hutchins v. IRS, 67 F.3d 40, 43 (3d Cir. 1995)).

Judicial estoppel is a "doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding." Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358 (3d Cir. 1996) (internal quotation marks and citations omitted). At the heart of judicial estoppel is the idea that "absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." Id. (quoting 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4477 (1981), p. 782). However, this doctrine is "not intended to eliminate all inconsistencies no matter how slight or inadvertent they may be." Id. It "should only be applied to avoid a miscarriage of justice" and "is only appropriate when the inconsistent positions are tantamount to a knowing misrepresentation to or even fraud on the court." Krystal Cadillac, 337 F.3d at 319, 324

(internal quotation marks and citations omitted). The "doctrine of judicial estoppel does not apply 'when the prior position was taken because of a good faith mistake rather than as part of a scheme to mislead the court.'" Ryan Operations, 81 F.3d at 362 (quoting Konstantinidis v. Chen, 626 F.2d 933, 939 (D.C. Cir. 1980)). "It is a fact-specific, equitable doctrine, applied at courts' discretion." In re Kane, 628 F.3d 631, 638 (3d Cir. 2010).

The Third Circuit Court of Appeals has formulated this test to help determine if judicial estoppel is appropriate:

> First, the party to be estopped must have taken two positions that are irreconcilably inconsistent. Second, judicial estoppel is unwarranted unless the party changed his or her position "in bad faith – i.e., with intent to play fast and loose with the court." Finally, a district court may not employ judicial estoppel unless it is "tailored to address the harm identified" and no lesser sanction would adequately remedy the damage done by the litigant's misconduct.

Krystal Cadillac, 337 F.3d at 319-20 (quoting Montrose Med. Grp. Participating Sav. Plan v. Bulger, 243 F.3d 773, 779-80 (3d Cir. 2001)). The Third Circuit has further concluded that a "rebuttable inference of bad faith arises when averments in the pleadings demonstrate both knowledge of a claim and a motive to conceal that claim in the face of an affirmative duty to disclose." Id. at 321 (citing Oneida Motor Freight, 848 F.2d at 416-18); Ryan Operations, 81 F.3d at 363. However, the

application of this inference does not arise "from the mere fact of nondisclosure." Ryan Operations, 81 F.3d at 364. Third Circuit precedent makes clear that a court should conduct an individualized factual assessment regarding, inter alia, knowledge and motive of the debtor surrounding disclosure of assets in a bankruptcy action. See id. at 363-64 (concluding that the inference did not apply where the creditors were most likely unaffected by the failure to disclose, the debtor received no benefit from its non-disclosure, and that there was no evidence that the debtor sought to conceal the claims deliberately); Krystal Cadillac, 337 F.3d at 321-324 (applying estoppel after analyzing the facts regarding knowledge and motive).

**V.   ANALYSIS**

   A.   Judicial Estoppel

        Defendants contend that, because the dismissal of Mr. Riddick's asbestos claims was merely administrative (such that the claims could be reinstated by Mr. Riddick or the MDL Court at some point in the future), the claims were assets whose omission from Schedule B of the bankruptcy action constituted an inconsistent position between the two lawsuits and creates an inference of bad faith. Plaintiffs contend that because the claims had been in a dismissed stage for approximately three

years at the time of the bankruptcy filing, they were not in essence assets and did not need to be disclosed – and that, if they did constitute assets that should have been disclosed, the failure to disclose them was a good faith mistake.

> i.   Step One: Has Plaintiff Taken Two Irreconcilably Inconsistent Positions?

It is undisputed that Mr. Riddick did not list asbestos claims (or any other legal claims) as assets in his bankruptcy filing. Mr. Riddick's duty of disclosure included identifying pending lawsuits, lawsuits he intended to bring, and any potential and likely lawsuits. See Krystal Cadillac-Oldsmobile, 337 F.3d at 322. By failing to include his asbestos claims as an asset in his bankruptcy filings, Mr. Riddick represented to the Bankruptcy Court that such an asset did not exist. Now, in this Court, Plaintiffs are pursing those same claims that Mr. Riddick represented did not exist. Accordingly, the two positions are irreconcilably inconsistent. See id. at 319-320.

> ii.   Step Two: Did Plaintiff Change His Position In Bad Faith

It is difficult to divine, through a prism of twenty years later, the exact nature and scope of the "administrative dismissals." See Bartel v. Various Defendants, 965 F. Supp. 2d 612, 617 (E.D. Pa. 2013) (Robreno, J.) (explaining the

difficulty in attempting to discern orders that were entered over twenty years ago in the context of personal jurisdiction in the MARDOC cases).[5] While Judge Weiner's orders appear to invite reinstatement subject to certain conditions, none of the cases that were administratively dismissed was ever reinstated from 1997 to 2009, until this Court, sua sponte, did so en masse. That a layman would have had the foresight to know in 2002 when he filed for Chapter 7 bankruptcy, that over eight years later a new presiding Judge of the MDL would reopen his asbestos case, albeit eleven years after it was filed, would have required unrealistic power of prescience. Rather, for all practical purposes, the entire MARDOC litigation in the MDL Court – including Mr. Riddick's case – was in a "black hole," uncertain to ever emerge again. See Hon. Eduardo C. Robreno, The Federal Asbestos Product Liability Multidistrict Litigation (MDL-875): Black Hole or New Paradigm?, 23 Widener L. J. 97, 126 (2013).

        Under these circumstances, the Court finds that the failure to disclose the asbestos claims was not in bad faith, nor an attempt to play "fast and loose" with the Bankruptcy

---

[5]         "Now, some 25 years later, the Court, with the assistance of counsel, is called upon to divine the meaning of less-than-pellucid orders entered long ago by prior courts, and to disentangle the parties from a web of procedural knots that have thwarted the progress of this litigation." Bartel, 965 F. Supp. 2d at 614.

Court. See Krystal Cadillac, 337 F.3d at 319-20.[6] Accordingly,
the Court does not find that Mr. Riddick changed his position
"in bad faith" such that it warrants the application of judicial
estoppel. See Ryan Operations, 81 F.3d at 363.[7] Accordingly,
Defendants' motion for summary judgment on grounds of judicial
estoppel will be denied. See Anderson, 477 U.S. at 248-50.

        B.    Real Party in Interest/Standing

        Defendants next contend that, despite Mr. Riddick's
failure to list the asbestos claims on his bankruptcy petition,
the claims now belong to the bankruptcy trustee (pursuant to 11
U.S.C. § 541(a)(1)) such that Plaintiffs have no right to pursue
them. They assert that, because Mr. Riddick did not properly

_____

[6]      While the Third Circuit has said that, a "rebuttable
inference of bad faith arises when averments in the pleadings
demonstrate both knowledge of a claim and a motive to conceal
that claim in the face of an affirmative duty to disclose,"
Krystal Cadillac, 337 F.3d at 321, the Third Circuit has also
noted that an inference of bad faith does not always arise from
"the mere fact of non-disclosure." Ryan Operations, 81 F.3d at
364. Under the facts of this case, the Court need not decide
whether there was a lack of bad faith on the part of Mr.
Riddick, or whether the inference of bad faith was rebutted, in
that in either event, the same result is obtained.

[7]      Additionally, the Court has reviewed the bankruptcy
petition filed by Mr. Riddick, see ECF No. 109-2, and concludes
that, to the extent the law generally requires disclosures of
the type of potential claims that were pending at the time of
the bankruptcy filing, an omission of those claims may very well
have been based on a good faith mistake of what was required by
the documents, or a simple incorrect assessment of the viability
of his long-dormant claims. See Ryan Operations, 81 F.3d at 362.

schedule those claims as assets, the trustees were incapable of passing those claims back to Mr. Riddick through abandonment of any remaining and unpursued assets as would normally happen pursuant to 11 U.S.C. § 554. Here, the Defendants' position has some initial merit.

It is true that, once a debtor has filed his bankruptcy petition, the bankruptcy estate, which is controlled by the trustee, "encompasses everything that the debtor owns upon filing a petition, as well as any derivative rights, such as property interests the estate acquires after the case commences," In re O'Dowd, 233 F.3d 197, 202 (3d Cir. 2000), and that "it is the trustee, and not the debtor, who has the capacity to pursue the debtor's claims." In re Kane, 628 F.3d at 637 (internal quotation marks and citations omitted). It is also true that, "[p]ursuant to 11 U.S.C. § 554(d), a cause of action, which a debtor fails to schedule, remains property of the estate because it was not abandoned and not administered." Allston-Wilson, No. 05-4056, 2006 WL 1050281, at *1; In re Kane, 628 F.3d at 637 (quoting Hutchins, 67 F.3d at 43).

In the instant case, Mr. Riddick erred by failing to disclose his administratively dismissed asbestos claims when he filed his bankruptcy petition. While the Court has held that this error was not in bad faith and thus not barred by judicial estoppel, these claims are nonetheless part of the bankruptcy

16

estate as they were not only potential claims, but were realized claims technically held in abeyance by the Court, and thus needed to be disclosed. Under these circumstances, the claims remain part of the bankruptcy estate and the trustee remains the real party in interest for such claims, even after the bankruptcy was closed. See Killmeyer v. Oglebay Norton Co., 817 F. Supp. 2d 681, 689 (W.D. Pa. 2011) (granting the trustee's motion to substitute for the plaintiff as the real party in interest since the debtor's unscheduled pre-petition claim could only be administered by the trustee); Saellam v. Norfolk S. Corp., No. 06-123, 2007 WL 1653737, at *4 (W.D. Pa. June 6, 2007) (concluding that "[b]ecause Plaintiff's cause of action is part of the bankruptcy estate, and has not been abandoned by the trustee, I hold Plaintiff is not the real party in interest and that only the trustee in bankruptcy, as sole representative of Plaintiff's estate, has standing to pursue the instant lawsuit"); Allston-Wilson, 2006 WL 1050281, at *1 (holding that where it was undisputed that the plaintiffs cause of action arose before her bankruptcy and that she failed to list the claim on her bankruptcy schedule, only the trustee could pursue the claim); see also Biesek v. Soo Line R. Co., 440 F.3d 410, 413-14 (7th Cir. 2006) (concluding that the trustee was the real party in interest for plaintiff's pre-bankruptcy claim which he failed to list as a bankruptcy asset and upholding the dismissal

17

of the case since the claim did not belong to the plaintiff and
the trustee had not sought to intervene).

Having held that the trustee, and not Plaintiffs, is
the real party in interest of the instant asbestos claims, the
Court must determine the appropriate remedy. Given that the
claims belong to the estate and that, therefore, distributions
of any recovery by the trustee should be made in accordance with
the priorities set forth in the Bankruptcy Code, the trustee
shall be given the opportunity to decide, in the first instance,
whether he/she will prosecute the claims.

The Court does not underestimate the practical
difficulties involved. The bankruptcy case is now closed in the
Bankruptcy Court for the Eastern District of Virginia, and the
identity and whereabouts of the trustee are unknown to this
Court. To expedite the process of putting the trustee on notice
of the claims, the Court will direct the Clerk of this Court to
(1) create a copy of this memorandum and accompanying order to
be filed on the docket of Mr. Riddick's bankruptcy case in the
Bankruptcy Court for the Eastern District of Virginia (No. 02-bk-
78362-SCS); (2) ascertain the identity of the trustee; and (3)
serve a copy of said memorandum and order upon the trustee at
his/her last known address. The trustee will have sixty (60)
days from the date of the filing of the order on the docket of
the Bankruptcy Court to seek to reopen the Bankruptcy action and

to advise this Court that he/she intends to prosecute the
instant asbestos claims.[8] In such event, the Court will stay the
instant proceedings while the bankruptcy estate is reopened
(providing monthly updates to the Court on the status of the
petition to reopen).[9] Once the bankruptcy estate is reopened, the
trustee will have thirty (30) days from the date of the
reopening of the estate to move this Court to substitute
himself/herself as the party-plaintiff in this case.

In the event that (1) the trustee fails to advise this
Court within sixty (60) days from the date the order is filed on
the docket of the Bankruptcy Court that he/she intends to
proceed with the instant claims,[10] (2) he/she declines to do so,

---

[8]      The trustee will be ordered to provide a signed letter
certifying his/her (a) filing of a petition with the Bankruptcy
Court to reopen Mr. Riddick's bankruptcy proceedings and (b)
intention to be substituted as party-plaintiff in the instant
case.

[9]      Once the trustee has petitioned the Bankruptcy Court
to reopen the bankruptcy proceedings, and until a motion for
substitution as the party-plaintiff has been filed by the
trustee, he/she will be required to file a monthly status update
with this Court (by the last day of each month), (a) informing
the Court of the status of the petition to reopen the bankruptcy
proceedings, and (b) certifying his/her continuing intention to
pursue the asbestos claims in the instant case.

[10]     It is not clear whether the trustee's failure to
respond to the Court's order would constitute an express or
implied abandonment of the instant claims under 11 U.S.C. § 554.
See Mele v. First Colony Life Ins., Co., 127 B.R. 82, 85-86
(D.D.C. 1991) (noting that the mere fact the trustee was
notified of the pending lawsuit, but failed to administer it,
would not necessarily mandate a finding of implied abandonment).

(3) he/she fails to provide a monthly status update, or (4)
he/she fails to move to be substituted as party-plaintiff within
thirty (30) days of the reopening of the bankruptcy action, the
Court will give Plaintiffs an additional thirty (30) days[11] to
provide this Court with notice that they intend to petition the
Bankruptcy Court for the Eastern District of Virginia to reopen
the bankruptcy proceedings and move in that court to compel
abandonment of the instant claims. See 11 U.S.C. § 554(b).[12] If

---

Importantly, however, the party seeking to demonstrate
abandonment bears the burden of persuasion. Hanover Ins. Co. v.
Tyco Industries, Inc., 500 F.2d 654, 657 (3d Cir. 1974). In
bankruptcy proceedings, the trustee's position is similar to
that of a fiduciary to both the debtor and creditors. Under the
bankruptcy code, the trustee must "investigate the financial
affairs of the debtor," 11 U.S.C. § 704(a)(4), and "collect and
reduce to money the property of the estate," 11 U.S.C. §
704(a)(1). Moreover, the trustee "has the duty to maximize the
value of the estate," Commodity Futures Trading Comm'n v.
Weintraub, 471 U.S. 343, 353 (1985), and "in so doing is bound
to be vigilant and attentive in advancing the estate's
interests." In re Martin, 91 F.3d 389, 394 (3d Cir. 1996). "In
sum, it is the trustee's duty to both the debtor and the
creditor to realize from the estate all that is possible for
distribution among the creditors." Id. (citing 4 Collier,
Bankruptcy ¶ 704.01 (15th ed.)).

[11]     This would be ninety (90) days from the date the
memorandum and order are filed on the Bankruptcy Court's docket
(for events pursuant to (1) or (2)); or thirty (30) days from
the date of the pertinent failure pursuant to (3) or (4).

[12]     Plaintiffs will be ordered to provide a signed letter
certifying their intention to petition the Bankruptcy Court to
reopen Mr. Riddick's bankruptcy proceedings and move the
Bankruptcy Court to compel abandonment of the instant claims.
For the reasons set forth in footnote 10 herein, the Bankruptcy
Court for the Eastern District of Virginia is the court in the
best position to provide the proper parties (including any

such notice is timely provided to this Court, the Court will stay the instant proceedings pending the disposition of Plaintiffs' motion in the Bankruptcy Court.

If notice is not received from either the trustee or Plaintiffs in the specified timeframe, the Court will dismiss Plaintiffs' case for failure to substitute the real party in interest. See Fed. R. Civ. P. 17(a)(3) ("The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted."). At this time, however, and under these circumstances, summary judgment in favor of Defendants on grounds of the real party in interest/standing will be denied without prejudice. Anderson, 477 U.S. at 248-50.

## VI. CONCLUSION

For all of the reasons stated above, Defendants' motion for summary judgment will be denied.

---

potential creditors) with sufficient notice of Plaintiffs' motion to compel abandonment of the instant claims. See 11 U.S.C. § 554(b).